IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GLENN HILL,

    Plaintiff,

  v.

R+L CARRIERS, INC.; R+L CARRIERS SHARED SERVICES, LLC,

    Defendants.
_____/

No. C 09-1907 CW

ORDER DENYING DEFENDANT SHARED SERVICES' MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION AND APPROVAL OF <u>HOFFMAN-LA ROCHE</u> NOTICE
(Docket Nos. 50, 61)

    Defendant R+L Carriers Shared Services, LLC moves for summary judgment or, in the alternative, for partial summary judgment (Docket No. 50). Plaintiff Glenn Hill opposes the motion and moves for conditional class action certification and approval of his <u>Hoffman-La Roche</u> notice (Docket No. 61). Defendant opposes Plaintiff's motion. The motions were heard on December 17, 2009. Having considered oral argument and all of the papers filed by the parties, the Court DENIES Defendant's motion and GRANTS Plaintiff's motion.

BACKGROUND

    Plaintiff Glenn Hill is a former employee of Defendant R+L Carriers Shared Services, LLC. Defendant provides operations and administrative employees to transportation services companies that operate under the R+L Carriers brand. Plaintiff was employed by Defendant between September, 2007 and December, 2008. At all times during his employment, Plaintiff was classified by Defendant as

exempt from overtime pay requirements and, accordingly, was not paid overtime compensation.

Plaintiff worked at Defendant's San Lorenzo terminal. He claims that his job title was "City Dispatcher," although Defendant asserts that he held the position of "First Shift Supervisor/City Dispatcher." See Hill Decl. ¶ 4; see also Nelson Decl. Ex. 2, 58:1-5; Fishpaw Decl. ¶ 4. Plaintiff's job entailed dispatching drivers to pick up and deliver various types of freight. Defendant claims that Plaintiff's duties included: (1) conducting daily meetings with "the management team;" (2) conducting daily meetings with drivers; (3) scheduling delivery appointments; (4) addressing and resolving driver staffing issues; (5) ensuring that daily equipment inspections were completed; (6) monitoring drivers' progress in completing scheduled deliveries and employing discretion to make adjustments when necessary; (7) receiving customer inquiries for pickups; (8) instructing drivers on the most efficient way to complete their scheduled pickups; (9) monitoring each driver's performance and disciplining or recommending disciplinary action to the Service Center Manager as necessary; and (10) addressing and resolving customer complaints. Defendant maintains that, among other things, Plaintiff exercised discretion and independent judgment in performing these duties sufficient to warrant his exemption from overtime pay requirements.

Plaintiff acknowledges that he scheduled delivery appointments; took customers' orders; dispatched drivers for pick-up requests based upon computer-generated assignments; and, on rare occasions, handled customer complaints. He disputes, however, Defendant's characterization of the extent of his discretion and

2

maintains that the Service Center Manager,[1] not the City Dispatcher, handled many of the duties described above. He asserts that his discretion and authority were in fact limited. In particular, he claims that he could not deviate from the instructions contained in the Terminal Services Operation Manual, which delineated his duties. And, to the extent he had discretion, he was required to seek approval from the Service Center Manager before taking action.

Plaintiff asserts that Defendant unlawfully mischaracterized him as exempt from overtime pay requirements. In addition, he alleges that Defendant failed to provide meal and rest breaks, and did not keep and provide adequate work and payroll records as required by law. He brings claims under the federal Fair Labor Standards Act (FLSA), California's wage-and-hour laws and California Business and Professions Code § 17200.

He intends to move to certify two subclasses for this action. His complaint defines the nation-wide sub-class as:

> All persons who worked for any period of time in the United States, but outside of California, who were classified as Dispatchers (including "City Dispatchers" and any other position(s) who are either called, or work(ed) as, dispatchers) in the three years prior to the filing of this Complaint.

First Am. Compl. (FAC) ¶ 27. His California sub-class is defined as:

> All persons who worked for any period of time in California who were classified as Dispatchers (including

---

[1] Plaintiff and Defendant disagree about the title held by the individual who has overall management duties over a terminal. Plaintiff maintains that the individual's title was "Terminal Manager" during his employment with Defendant. Without deciding which title is factually accurate, the Court refers to this position as "Service Center Manager" for the purposes of clarity.

3

>     "City Dispatchers" and any other position(s) who are
>     either called, or work(ed) as, dispatchers) in the four
>     years prior to the filing of this Complaint, up through
>     the final disposition of this action.

FAC ¶ 27.

## DISCUSSION

I. Defendant's Summary Judgment Motion

    A. Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. Id.; see also Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991). Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case. UA Local 343, 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." Id. This standard does not change merely because resolution of the relevant issue is "highly fact specific." See id.

B. Analysis

    1. Summary Judgment Based on Exemption from Overtime Pay Requirements

Under the FLSA and California law, employees must ordinarily be paid overtime compensation if they work more than forty hours in one week. 29 U.S.C. § 207(a)(1); Cal. Lab. Code § 510. Both federal and state law exempt from this rule employees who work in executive and administrative capacities. 29 U.S.C. § 213(a)(1); Cal. Lab. Code § 515; Cal. Code Regs. tit. 8, § 11090(1)(A)(2) (codifying California Industrial Welfare Commission Wage Order No. 9-2001, which pertains to employees in the transportation industry). Also exempt from overtime coverage are certain employees of motor carriers covered by the federal Motor Carrier

Act. 29 U.S.C. § 213(b)(1); 29 C.F.R. § 782.2; Cal. Code Regs. tit. 8, § 11090(3)(L).

Employers have the burden of proving that an employee is exempt from federal and state overtime pay requirements. See Gieg v. DDR, Inc., 407 F.3d 1038, 1045 (9th Cir. 2005); Gomez v. Lincare, Inc., 173 Cal. App. 4th 508, 515 (2009) (citing Sav-On Drug Stores, Inc. v. Superior Court, 34 Cal. 4th 319, 338 (2004)). Courts construe exemptions narrowly against employers. Klem v. County of Santa Clara, California, 208 F.3d 1085, 1089 (9th. Cir. 2000); Gomez, 173 Cal. App. 4th at 515. The determination of whether an exemption applies requires a fact-intensive inquiry. See Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 945 (9th Cir. 2009) (citing Tumminello v. United States, 14 Cl. Ct. 693, 697 (1988) ("The determination of whether an exemption applies to a given individual . . . is a very fact-specific exercise.").

Defendant claims that it is entitled to summary judgment because Plaintiff was properly classified as an exempt employee. It asserts that he was subject to the administrative, executive, motor carrier and "combination" exemptions under federal and state law. Because Defendant would bear the burden at trial to prove that Plaintiff was an exempt employee, it must show that there is no genuine issue of material fact concerning each element of an exemption in order to prevail on summary judgment.

        a. Administrative Employee Exemption

Plaintiff asserts that Defendant does not show, as a matter of law, that he exercised sufficient discretion and independent judgment to qualify as an administrative employee.

Both federal and state law exempt administrative employees

6

from overtime pay requirements. A component common between the federal and state exemptions is the purportedly exempt employee's exercise of discretion and independent judgment. Under federal law, the employee must have a "primary duty" that "includes the exercise of discretion and independent judgment with respect to matters of significance."[2] 29 C.F.R. § 541.200. The California analog exempts an employee who "customarily and regularly exercises discretion and independent judgment." Cal. Code Regs. tit. 8, § 11090(1)(A)(2)(b).

Plaintiff provides testimonial and documentary evidence that contradicts Defendant's assertion that he exercised sufficient discretion and independent judgment to be exempt. He states that drivers' assignments were generated by computer and that his role was limited to distributing these assignments to drivers. Nelson Decl., Ex. A 96:11-97:19; see also Fishpaw Decl., Ex. C at RLC000520 (explaining that there is a "default driver" assigned to each "destination area"). Further, Plaintiff states that when he was confronted with imbalances in drivers' workloads, he would first ask the Service Center Manager whether he could make adjustments. Nelson Decl., Ex. A 99:25-100:11.

The Terminal Manual corroborates Plaintiff's position. For many duties, including modifying drivers' work schedules or calling

---

[2] Federal law provides additional guidance in determining whether an employee exercises sufficient discretion and independent judgment. Employees exercise discretion and independent judgment "even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c). "The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment." Id.

7

in an additional driver, the Manual instructs a City Dispatcher first to seek the Service Center Manager's approval. See Fishpaw Decl., Ex. C at RLC000503, RLC000506. With regard to driver discipline, the Manual provides that the City Dispatcher may not take action without first consulting the Service Center Manager because the "Service Center Manager is responsible for dealing with discipline issues." Fishpaw Decl., Ex. C at RLC000570. Further, contrary to Defendant's assertion, City Dispatchers do not contact customers when a driver misses a scheduled pickup; instead, this duty is given to the Service Center Manager. Fishpaw Decl., Ex. C at RLC000548.

The mandatory consultation of the Service Center Manager suggests that Plaintiff did not exercise discretion or independent judgment on "matters of significance" or "customarily or regularly." Instead, the Manual implies that Plaintiff's role was limited to identifying problems and reporting them to the Service Center Manager. In turn, the Service Center Manager ultimately decided how to resolve these issues. Indeed, much of the Terminal Manual prescribes, in substantial detail, how to perform the duties of the City Dispatcher, most of which appear ministerial in nature. This suggests that discretion was not a central component of Plaintiff's job.

Citing Vinole, Defendant asserts that the Court should consider an employer's realistic expectations to determine whether Plaintiff was an exempt employee. See 571 F.3d at 945. However, an employer's expectations do not determine whether an employee performs exempt duties. As Vinole states, in the context of analyzing whether a California exemption applies, a court first

8

"examines in an individualized fashion the work actually performed by the employee to determine how much of that work is exempt." Id. Then, the court turns to whether "the employee's work was consistent with the employer's expectation and whether those expectations were realistic." Id. Here, Defendant's expectations, as embodied by the Terminal Manual, are consistent with Plaintiff's description of his work. Defendant's testimonial evidence, to the extent that it suggests Defendant had even higher expectations of Plaintiff, creates a genuine issue of material fact that must be resolved at trial.

Plaintiff's testimonial and documentary evidence contradicts Defendant's evidence that Plaintiff exercised discretion and independent judgment with respect to matters of significance in his job as a City Dispatcher. Because this creates a triable issue on whether Plaintiff was an exempt administrative employee, summary judgment on this ground is not warranted.

          b.    Executive Employee Exemption

Plaintiff maintains that Defendant does not show that he satisfied all the requirements necessary to qualify as an exempt executive employee. For employees to qualify as exempt executive employees under federal and state law, they must, among other things: (1) manage the enterprise in which they work or a "customarily recognized department or subdivision thereof," and (2) have authority to hire or fire other employees or, in the alternative, have particular weight given to their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other status change of other employees. 29 C.F.R. § 541.100; Cal. Code Regs. tit. 8, § 11090(1)(A)(1).

Defendant acknowledges that Plaintiff's primary duty was dispatching. As noted above, Plaintiff testified at his deposition and the Terminal Manual states that Plaintiff first had to seek leave of the Service Center Manager before taking many substantive actions. These facts allow a reasonable inference that, in contrast to Defendant's assertion, Plaintiff did not have management responsibilities.

Even if Plaintiff had managerial duties, he did not have the requisite influence over personnel decisions. Defendant concedes that Plaintiff lacked authority to hire or fire drivers. Nelson Decl., Ex. 1 at 170:6-10; Nelson Decl., Ex. 2 at 244:8-9, 268:12-14. And with regard to the influence of his recommendations, Plaintiff has proffered sufficient evidence to contradict Defendant's assertion that his suggestions were given particular weight. Federal law provides factors to consider in determining whether "particular weight" was afforded, including "the frequency with which such suggestions and recommendations are made or requested" and "the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Plaintiff testified that he was not asked for recommendations, and, to the extent that he gave any, they were ignored. Nelson Decl., Ex. A, 131:21-23, 170:8-10. Defendant did not provide contrary evidence to show that any of Plaintiff's recommendations resulted in substantive personnel action. Thus, a jury could reasonably infer that Plaintiff did not sufficiently influence Defendant's personnel decisions.

Thus, summary judgment on the ground that Plaintiff was an exempt executive employee is unwarranted because there is a triable

issue on whether Plaintiff performed executive duties and had the requisite influence over personnel decisions.

### c. Motor Carrier Exemption

To qualify as an exempt employee under the federal motor carrier exemption, the employee must, among other things, "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a).[3] Generally, dispatching is not considered work that affects the safety of motor vehicle operation. See 29 C.F.R. § 782.2(f); cf. id. § 782.6(c)(1) (discussing the applicability of the exemption to mechanics, and stating that activities "which do not directly affect such safety of operation include those performed by employees whose jobs are confined to such work as that of dispatchers . . . .").[4]

---

[3] Defendant maintains that Plaintiff was also exempt from state overtime pay requirements under California's motor carrier exemption. However, it does not make a prima facie showing that this state exemption applies to Plaintiff. The California exemption applies to employees whose hours of service are subject to 49 C.F.R. §§ 395.1-395.13. Cal. Code Regs. tit. 8, § 11090(3)(L). However, these federal regulations relate to "hours of service for drivers." 49 C.F.R. pt. 395; see also 49 C.F.R. § 395.1(a)(1) (stating that part 395 applies to "all motor carriers and drivers"). Because Defendant has not provided evidence that Plaintiff was a driver subject to these regulations, it is not entitled to summary judgment that Plaintiff was exempt under the California motor carrier exemption.

[4] Defendant cites McIntyre v. FLX of Miami, Inc., 2008 WL 4541017 (S.D. Fla.), for the proposition that dispatchers can be exempt under the motor carrier exemption. There, the plaintiff's responsibilities included "checking the vehicles for tire safety, adequate oil, and verifying the vehicle was in safe operation before the driver left FLX's facility for deliveries." Id. at *7.
(continued...)

11

Plaintiff provides evidence contradicting Defendant's showing that his duties directly impacted vehicle safety. He stated at his deposition that he did not conduct truck inspections or otherwise handle truck safety. Nelson Decl., Ex. 1 at 141:25-142:2. Instead, he stated that he was instructed that he "was to be no part of it," and that safety was under the purview of the Service Center Manager and the Safety Manager. Nelson Decl., Ex. 1 at 142:2-4. Also, Plaintiff stated that, if a driver experienced a mechanical malfunction on the road, the driver would call the "Breakdown Department," which, in turn, would provide Plaintiff with information concerning towing the truck back to the terminal. Nelson Decl., Ex. 1 at 133:24-134:2. These statements support a reasonable inference that Plaintiff's duties did not directly affect the safety of Defendant's vehicles.

Thus, there is a triable issue on whether Plaintiff was exempt from overtime pay under the motor carrier exemption, and summary judgment based on this exemption is not warranted.

d. Exempt through Combination of Exemptions

Under federal law, "an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption." 29 C.F.R. § 541.708. California appears to recognize a similar "combination" exemption. See Cal. Div. of Labor Standards Enforcement Opinion Letter of May 23, 2003, at 5.

As noted above, Defendant has not proffered uncontroverted

---

[4](...continued)
Thus, in that case, the dispatcher had duties related to safety that extended beyond mere dispatching. Here, Defendant has not proffered uncontested evidence that Plaintiff played a similar role.

12

evidence that Plaintiff's work primarily consisted of administrative or executive tasks or both. Thus, summary judgment on this basis is not warranted.

    2. Partial Summary Judgment as to Plaintiff's Other Claims

Defendant asserts that if the Court grants summary judgment that Plaintiff was exempt, summary judgment would be warranted on his claims for recordkeeping violations, failure to pay wages and unfair business practices. Because the Court does not find that Defendant has shown that Plaintiff is exempt from overtime pay, the Court denies summary judgment on these other claims.

II. Plaintiff's Motion for Conditional Certification and Approval of Hoffman-La Roche Notice

    A. Legal Background

The FLSA authorizes workers to sue for unpaid overtime wages on their own behalf and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Unlike class actions brought under Federal Rule of Procedure 23, however, collective actions brought under the FLSA require that individual members "opt in" by filing a written consent. See 29 U.S.C.A. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

In Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989), the Supreme Court held that, "in appropriate cases," district courts should exercise their discretion to authorize and facilitate notice of a collective action to similarly situated

13

potential plaintiffs.[5]

As noted above, the FLSA provides for a collective action where the complaining employees are "similarly situated." 29 U.S.C. § 216(b). But the FLSA does not define "similarly situated," nor has the Ninth Circuit defined it. As noted by the Tenth Circuit, there is little circuit law defining "similarly situated." Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001).

Although various approaches have been taken to determine whether plaintiffs are "similarly situated," district courts in this circuit have used the ad hoc, two-tiered approach. See Wynn v. Nat'l Broad. Co., Inc., 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002) (noting that the majority of courts prefer this approach); see also Thiessen, 267 F.3d at 1102-03 (discussing three different approaches district courts have used to determine whether potential plaintiffs are "similarly situated" and finding that the ad hoc approach is arguably the best of the three approaches); Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001) (finding the two-tiered approach to certification of § 216(b) opt-in classes to be an effective tool for district courts to use). Under this approach, the district court makes two determinations, on an ad hoc, case-by-case basis. The court first makes an initial "notice stage" determination of whether plaintiffs are similarly situated, deciding whether a collective action should be certified

---

[5] Although Hoffmann-La Roche involved claims brought under the Age Discrimination in Employment Act (ADEA), because ADEA incorporates § 16(b) of the Fair Labor Standards Act into its enforcement scheme, the same rules govern judicial management of collective actions under both statutes. See, e.g., Shaffer v. Farm Fresh, Inc., 966 F.2d 142, 147 (4th Cir. 1992).

14

for the purpose of sending notice of the action to potential class members. See, e.g., Thiessen, 267 F.3d at 1102. For conditional certification at this notice stage, the court requires little more than substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan." Id. The standard for certification at this stage is a lenient one that typically results in certification. Wynn, 234 F. Supp. 2d at 1082.

The second determination is made at the conclusion of discovery, usually on a motion for decertification by the defendant, utilizing a stricter standard for "similarly situated." Thiessen, 267 F.3d at 1102. During this second stage analysis, the court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit. Id. at 1103.

Notably, collective actions under the FLSA are not subject to the requirements of Rule 23 of the Federal Rules of Civil Procedure for certification of a class action. Id. at 1105. "The requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure. All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." Wertheim v. Arizona,

1993 WL 603552, at *1 (D. Ariz.) (citations omitted).

B. Analysis

1. Conditional Certification

As noted above, the standard for certification at the notice stage is a lenient one. Plaintiff has met his burden of showing that all City Dispatchers are similarly situated for the purposes of conditional class certification: all City Dispatchers do not receive overtime pay, work similar schedules and perform similar duties. Plaintiff has submitted his own deposition testimony and that of James Fishpaw, one of Defendant's vice-presidents of human resources, as well as documentary evidence, including Defendant's Terminal Manual and advertisements soliciting applicants for dispatcher positions, all of which support the allegations contained in his complaint and in the current motion. This showing satisfies his initial burden at the notice stage.

Defendant proffers fifteen declarations by individuals who currently hold the "First Shift Supervisor/City Dispatcher" or "City Dispatcher" positions. At this stage, these declarations do not negate the showing Plaintiff has made for conditional certification. Defendant may resubmit these declarations as part of a decertification motion, after discovery is complete. At that time, the Court will apply the more stringent standard discussed above.

2. Proposed Notice and Opt-in Form

The Court finds that Plaintiff's proposed notice, as modified and attached, provides putative class members with sufficient information about their rights and obligations. The notice shall be provided to putative class members who were employed by

16

Defendant within three years of the date of this Order.  The Court sets a seventy-five day deadline for potential class members to return their consent forms.  The parties appear to agree on a third-party administrator to distribute the notices; the parties' agreed-upon administrator shall distribute the notices through first-class mail.  Any website providing information on this action shall include the Court's approved notice.

Plaintiff asks the Court to order Defendant to provide his counsel with contact information for all putative class members so that counsel can monitor the distribution of notices.  He claims that Defendant is "attempting to hide putative class members."  Reply at 12.  Plaintiff points to the discrepancy between Mr. Fishpaw's deposition and his declaration filed in opposition to Plaintiff's conditional certification motion.  In the former, Mr. Fishpaw estimated that Defendant has over 400 City Dispatcher positions, Nelson Decl., Ex. 6 at 52:19-25, and, in the latter, he states that Defendant "currently employs 128 City Dispatchers," Fishpaw Decl. ¶ 7.  This discrepancy warrants disclosing information about the putative class members to Plaintiff's counsel.  Defendant shall disclose to Plaintiff, subject to a protective order if necessary, the number, location and actual job titles of persons who are classified as dispatchers.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment, or in the alternative, partial summary judgment.  (Docket No. 50.)  The Court GRANTS Plaintiff's motion for conditional collective action certification and authorization of a <u>Hoffman</u>-<u>LaRoche</u> opt-in notice (Docket No. 61).  The Court

conditionally certifies Plaintiff's nation-wide sub-class and approves his proposed opt-in notice, as modified and attached. Notice shall be provided to putative nation-wide sub-class members who worked for Defendant within three years from the date of this Order. These class members have seventy-five days from the date the notice is mailed to return their consent forms. Defendant shall, within two weeks of the date of this order, produce to the mutually agreed-upon third-party administrator the names, addresses, alternate addresses, email addresses, social security numbers and telephone numbers of all prospective members of the class. Notice shall be mailed two weeks from the date that the third-party administrator receives the data. In addition, Defendant shall, within two weeks of the date of this order, disclose to Plaintiff the number, location and actual job titles of persons who are classified as dispatchers.

A further case management conference is scheduled for April 29, 2010 at 2:00 p.m.

IT IS SO ORDERED.

Dated: January 22, 2010

CLAUDIA WILKEN
United States District Judge

18